IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD LACONTORA,<br><br>                Plaintiff,<br><br>   v.<br><br>GENO ENTERPRISES, LLC<br>d/b/a Chick-Fil-A<br><br>                Defendants. | CIVIL ACTION<br>NO. 21-03948 |

**Slomsky, J.**                                                                                                     **March 23, 2022**

**OPINION**

**I.    INTRODUCTION**

This action arises out of allegations by Plaintiff Richard Lacontora ("Plaintiff") that he was improperly terminated by his former employer, Geno Enterprises, LLC d/b/a Chick-Fil-A ("Defendant"). (See Doc. No. 1-4.) More specifically, his Complaint avers that he was subjected to race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (Id. at 6-8.) He also brings a common law wrongful termination claim and requests punitive damages. (Id. at 8-9.)

On September 10, 2021, Defendant filed a Motion to Dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). (See Doc. No. 3.) On September 29, 2021, Plaintiff filed a response in opposition. (See Doc. No. 6.) For reasons that follow, the Motion to Dismiss (Doc. No. 3) will be **GRANTED**.

## II.    BACKGROUND

### A.  Factual Background

Defendant first hired Plaintiff, a Caucasian male, as a team member when he was 17 years old.  (See Doc. No. 1-4 ¶ 5.)  As an employee, he was subject to all policies set forth in Defendant's Team Member Policy Handbook, including Defendant's "Civility, Equal Employment Opportunity & Non-Harassment Policy."  (Doc. No. 1-4 ¶ 6.)  At the time of the central incident in this case, Plaintiff was the Director of Training Development.  (Doc. No. 3 at 1.)

On June 3, 2020, Plaintiff saw a fellow employee, who is African American, standing outside in the rain.  (Id. ¶¶ 9, 11.)  In the presence of other minority-race team members, Plaintiff said, "he looks like a protester, he can be out in the rain."[1]  (Id.)  This comment came just days after the death of George Floyd and subsequent protests.  (Id. ¶¶ 10-11.)  Employees who heard the comment filed a complaint with Defendant's management.  (See Doc. No. 3 at 1.)  Consequently, on July 6, 2020, Plaintiff was terminated because the comment was deemed "insensitive, unprofessional and inappropriate."  (See Doc. No. 1-4 ¶¶ 10-11, 21.)

Plaintiff initially filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 12.)  He received a Right to Sue Letter on May 11, 2021.  (Id.)  On September 3, 2021, Plaintiff filed his Complaint in state court.  (Doc. No. 3 at 2.)  Defendant then removed the case to this Court.  (Id.)  The Complaint asserts three causes of action against Defendant: 1) race discrimination in violation of Title VII of the Civil Rights Act (Count I); 2) retaliation in violation of Title VII (Count II); and 3) common law wrongful termination (Count III).  (See generally, Doc. No. 1-4.)  Count IV contains a request for attorney's fees and punitive damages.

---

[1]    There is no dispute that Plaintiff made this comment and that it was the basis for his termination.  (See Doc. No. 6-1 at 1.)

(Id. at 9-10.) Since Plaintiff is a Caucasian male, the parties agree that this case involves allegations of "reverse discrimination." (See Doc. No. 3 at 4.) (See also Doc. No. 6-1 at 2.)

### B. Defendant's Motion to Dismiss

On September 10, 2021, Defendant filed a Motion to Dismiss the Complaint in its entirety. (See Doc. No. 3.) As to Count I of the Complaint, Defendant asserts that Plaintiff was fired not because of his race, but rather because he made a racially insensitive remark about an African-American employee. (Id. at 5.) Moreover, Defendant submits that Plaintiff has failed to plead any facts to support an inference of discrimination. (Id. at 4.) Defendant emphasizes that Plaintiff has not offered any comparator evidence, or evidence that other employees, not in Plaintiff's protected class, were treated more favorably than him. (Id.) [2]

As to Count II alleging retaliation, Defendant argues that Plaintiff's "general complaint of unfair treatment is insufficient to establish protected activity under Title VII." (Id. at 6) (quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006)). In addition, Defendant claims that Plaintiff has not shown any retaliatory animus, such as "unusually suggestive temporal proximity between the employee's protected activity and the adverse action," which is the termination of his employment, or "a pattern of antagonism in the period between the protected activity and the adverse action." (Id.) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

---

[2]  One way to show an inference of unlawful discrimination is through comparator evidence, which consists of allegations that similarly situated employees who are not members of the protected class were treated more favorably than the plaintiff. (See Doc. No. 3 at 4-5.) Defendant correctly asserts that Plaintiff has produced no such comparators; however, comparator evidence is not required to survive a Motion to Dismiss. See Bullock v. City of Philadelphia, Civ. No. 19-1183, 2020 WL 4365601 at *3 (E.D. Pa.2020) (discussing Golod v. Bank of Am. Corp., 403 F.App'x 699, 702 n.2 (3d Cir. 2010)).

As to the common law wrongful termination claim, Defendant notes that in Pennsylvania no such cause of action exists when there is at-will employment relationship. (Id. at 7.) One exception is when an employer discharges an employee "when specifically prohibited from doing so by statute." (Id.) (citations omitted). Thus, whether Defendant can state a common law claim for wrongful termination depends on whether he can state a claim under Title VII, which Defendant asserts he cannot. (Id. at 8-9.) Finally, Defendant submits that the punitive damages claim should be dismissed because Plaintiff has not shown that it "engaged in discriminatory practices with malice or with reckless indifference to [his] federally protected rights." (Id. at 9.) Defendant also notes that, if the Court dismisses all of Plaintiff's claims, his request for punitive damages is moot. (Id.)

On September 29, 2021, Defendant filed a response in opposition. He states that "Plaintiff and Defendant agree that Plaintiff made the statement 'he looks like a protester, he can be out in the rain.' Where the parties disagree is as to the context of the remark and whether or not it was a racially insensitive remark." (Doc. No. 6-1 at 1.) He further elaborates that his termination "was a knee-jerk reaction to the political climate of the Summer 2020."[3] (Id. at 2.) Thus, he contends that his three claims and request for punitive damages should not be dismissed. (Id. at 3-4.)

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell

---

[3] Plaintiff asserts that "[m]aybe [he] was trying to be funny and failed." (See Doc. No. 6-1 at 2.)

Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

5

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV. **ANALYSIS**

    **A. Defendant's Motion to Dismiss Count I of the Complaint alleging Race Discrimination will be granted because Plaintiff was not fired because of race.**

Count I alleges a claim of race discrimination under Title VII against Defendant. In his Complaint, Plaintiff claims he was terminated for making a remark about an African American employee that was perceived as being a racially insensitive comment, even though it was not racially motivated. (See Doc. No. 1-4 ¶¶ 11, 14.) In response, Defendant claims that he was fired not because of his race, but rather because he made this inappropriate remark. Further, Defendant asserts that Plaintiff has not shown that he was treated differently than other employees because of his race. (See Doc. No. 3 at 3-5.)

Title VII makes it an "unlawful employment practice for an employer ... to discriminate against any individual . . ., because of such individual's race, color, religion, sex, or national origin." See Whetstine v. Woods Services, Civ. No. 21-02289, 2022 WL 221526 at *4 (quoting 42 U.S.C. § 2000e–2(a)(1)). See also Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016). Title VII prohibits two forms of discrimination: disparate treatment and disparate impact. Disparate treatment involves allegations of intentional discrimination, where a certain employment decision was based on a prohibited factor. In a disparate impact case, a plaintiff must prove that application of a specific employment practice discriminates against members of a protected class. Meditz v. City of Newark, 658 F.3d 364, 370 (3d Cir. 2011) (citing EL v. Septa, 479 F.3d 232, 239-40 (3d Cir. 2007)). In this case, Plaintiff is asserting allegations of disparate treatment.

In a Title VII disparate treatment claim, there are two ways a plaintiff can state a claim for discrimination, "pretext" and "mixed-motive," with each theory applying a different standard of causation. Watson v. Southeastern Pennsylvania Transportation Authority, 207 F.3d 207, 214-15. (3d Cir. 2000). In a "pre-text" case, the complaint must allege that consideration of the impermissible factor was "a determinative factor" in the adverse employment action.[4] Id. In a "mixed-motive" case, a plaintiff may show that the employment decision was "the result of multiple factors, at least one of which is illegitimate."[5] Id. at 215 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989)).

Here, while Plaintiff does not specifically state under which theory he intends to proceed, in cases of reverse discrimination, the Third Circuit directs courts to employ a modified pre-text framework. See Ledda v. St. John Neumann Regional Academy, Civ. No. 20-700, 2021 WL 1035106 at *5 (D. N.J. 2021) (citing Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999)). Under this framework, a plaintiff must plausibly state facts to show "that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." Id. (quoting Iadimarco, 190 F.3d at 161.) In this case, the protected trait relied upon by Plaintiff is race.

Additionally, in a case involving unlawful discharge, the plaintiff is required to show: 1) he is a member of a Title VII protected class; 2) he was qualified for the job that he held, 3) he was terminated, and 4) that his replacement is of a different race than the plaintiff or there is some other basis (such as comparator or statistical evidence) for inferring discriminatory intent. McDonnell

---

[4] The "pretext" theory was established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[5] The "mixed-motive" theory was set forth first in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

Douglas Corp v. Green, 411 U.S. 792, 800-802 (1973). See also Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999). Here, Plaintiff has failed to allege any facts to support these elements.

The facts in this case are analogous to those in Ledda, supra. In Ledda, a teacher, after a series of incidents involving minority students, was fired from a school because his behavior led his supervisor to believe he was a racist. Id. at *1-2. The teacher denied this accusation and brought a claim for reverse discrimination under Title VII, claiming that he was treated less favorably because he was a Caucasian man. The court held that he could not state a claim for reverse discrimination:

> Ledda's factual averments describe adverse employment actions based upon a perception that he was a racist. Thus, the well-pleaded allegations in the complaint focus on alleged racism, as opposed to race … We note that Ledda's complaint relies on the assertion that his supervisor, and consequently [the school], wrongfully perceived him as a racist. In this regard, while we have not found any authority directly addressing the question of whether accusations of racism equate to race discrimination under Title VII, in other contexts courts have found that conflating race and racism is a false equivalence. Thus, it has been held that "[w]hile 'falsely accusing someone of being a racist is morally wrong,' such accusations cannot form the basis of a racial discrimination claim."

Id. at *5 (quoting Lovelace v. Washington Univ. Sch. of Med., 931 F.3d 698, 708 (8th Cir. 2019)) (citations omitted).

The same holds true here for Plaintiff. Plaintiff admits that he was fired because of the remark he made and "[w]here the parties disagree is as to the context of the remark and whether or not it was a racially insensitive remark." (Doc. No. 6-1 at 1.) This has nothing to do with Plaintiff's status as a Caucasian man. Rather, the allegations in the Complaint suggest at best that Defendant wrongfully perceived Plaintiff as making a racist comment. Plaintiff, like the teacher in Ledda, wrongfully conflates the ideas of race and racism. Defendant's motive for terminating

Douglas Corp v. Green, 411 U.S. 792, 800-802 (1973). See also Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999). Here, Plaintiff has failed to allege any facts to support these elements.

The facts in this case are analogous to those in Ledda, supra. In Ledda, a teacher, after a series of incidents involving minority students, was fired from a school because his behavior led his supervisor to believe he was a racist. Id. at *1-2. The teacher denied this accusation and brought a claim for reverse discrimination under Title VII, claiming that he was treated less favorably because he was a Caucasian man. The court held that he could not state a claim for reverse discrimination:

> Ledda's factual averments describe adverse employment actions based upon a perception that he was a racist. Thus, the well-pleaded allegations in the complaint focus on alleged racism, as opposed to race … We note that Ledda's complaint relies on the assertion that his supervisor, and consequently [the school], wrongfully perceived him as a racist. In this regard, while we have not found any authority directly addressing the question of whether accusations of racism equate to race discrimination under Title VII, in other contexts courts have found that conflating race and racism is a false equivalence. Thus, it has been held that "[w]hile 'falsely accusing someone of being a racist is morally wrong,' such accusations cannot form the basis of a racial discrimination claim."

Id. at *5 (quoting Lovelace v. Washington Univ. Sch. of Med., 931 F.3d 698, 708 (8th Cir. 2019)) (citations omitted).

The same holds true here for Plaintiff. Plaintiff admits that he was fired because of the remark he made and "[w]here the parties disagree is as to the context of the remark and whether or not it was a racially insensitive remark." (Doc. No. 6-1 at 1.) This has nothing to do with Plaintiff's status as a Caucasian man. Rather, the allegations in the Complaint suggest at best that Defendant wrongfully perceived Plaintiff as making a racist comment. Plaintiff, like the teacher in Ledda, wrongfully conflates the ideas of race and racism. Defendant's motive for terminating

him was the comment he made about another employee, not based on his race. While, as stated in Ledda, falsely accusing someone of being racist is "morally wrong," it cannot form the basis of a Title VII discrimination claim. Thus, viewing the facts in the Complaint in a light most favorable to Plaintiff, he has not alleged sufficient facts to show that he was fired based upon his race or that he was treated less favorably than other employees because he is a Caucasian man. Defendant's Motion to Dismiss Count I will be granted.

### B. Defendant's Motion to Dismiss Count II will be granted because Plaintiff has not asserted any protected activity.

Count II of the Complaint alleges a Title VII retaliation claim. In the Complaint, Plaintiff states that "Defendant committed unlawful employment practices when it retaliated against Plaintiff for his efforts to oppose practices reasonably believed to be prohibited by Title VII." (Doc. No. 1-4 ¶ 17.) He goes on to state that "Defendant Employer retaliated against Plaintiff Employee by terminating his position and essentially branding his comments as racist." (Id. ¶ 19.) In its Motion to Dismiss, Defendant asserts that a general complaint of unfair treatment does not establish protected activity under Title VII and Plaintiff has not demonstrated any retaliatory animus. (Doc. No. 3 at 5-7.)

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: 1) that he engaged in protected activity; 2) that he suffered an adverse employment action; and 3) there was a causal connection between the protected activity and the adverse action.[6] Carvalho-Grevious v. Delaware State Uni., 851 F.3d 249, 257 (3d Cir. 2017). With respect to protected activity, "Title VII's retaliation provisions protect employees who participate in [either] Title VII's

---

[6] A plaintiff must show that his participation in protected activity was the but-for cause of any alleged adverse employment action he suffered. Univ. of Texas v. Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 570 U.S. 338 (2013).

statutory process[7] or who otherwise oppose employment practices made illegal by Title VII." Curay-Cramer, 450 F.3d at 134-45. Plaintiff's case is premised on his opposition to Defendant's illegal employment practices. (See Doc. No. 1-4 ¶ 17.) In this context, "[t]he employee must have a reasonable, good faith belief that the practice he is opposing constituted unlawful discrimination." Ledda, 2021 WL 1035106 at *7 (quoting Moore v. City of Philadelphia, 461 F.3d 331, 431 (3d Cir. 2006).

Here, Plaintiff offers only conclusory allegations that he was retaliated against "for his efforts to oppose practices reasonably believed to be prohibited by Title VII" and "by terminating his position and essentially branding his comments as racist." (Doc. No. 1-4 ¶¶ 17, 19.) Neither allegation sufficiently alleges protected activity. For instance, Plaintiff has not pled that he complained about an unlawful employment practice and was then fired because he protested this practice. Rather, the Complaint alleges that he made a comment about another employee and then was fired because of this comment. Thus, the Complaint does not set forth sufficient facts to show that Plaintiff had a good faith belief that he was opposing discriminatory conduct under Title VII and was terminated because of this opposition. Defendant's Motion to Dismiss Count II will be granted.

### C. Plaintiff does not state a claim for common law wrongful termination because he has not shown that Defendant fired him in violation of Title VII.

Next, Plaintiff brings a common law wrongful termination claim against Defendant. In Pennsylvania, an at-will employee may bring a common law wrongful termination claim "only in the most limited of circumstances where the termination implicates a clear mandate of public

---

[7] This usually involves an employee who has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).

policy." McLaughlin v. Gastrointestinal Specialists, Inc., 561 Pa. 307, 314 (2000). The only instances where Pennsylvania courts have recognized wrongful termination claims on the basis of public policy is either "an infringement of constitutional rights or a violation of a statute."[8]  See Bennett v. Republic Services, Inc., 179 F.Supp.3d 451, 456-57 (E.D. Pa. 2016) (citing cases). Further, the Third Circuit Court of Appeals has explained that, to permit an at-will employee to recover for wrongful discharge, the employee must do more than show that he or she merely disagrees with the termination.  Id.  (discussing Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 620-24 (3d Cir. 1992).  Rather, a plaintiff must show "an illegal act or an infringement upon a fundamental right."  Id.

Here, Plaintiff has made no such showing. In Counts I and II, Plaintiff asserts claims in violation of Title VII. As discussed above, Defendant did not violate Title VII when it terminated Plaintiff for a comment it deemed to be racially insensitive. And Plaintiff has not shown a violation of a statute that would implicate public policy. Plaintiff has only shown that he disagrees with Defendant's interpretation of the comment that led to his termination. Therefore, the common law wrongful termination claim will be dismissed.

**D.  Plaintiff's request for punitive damages will be denied as moot.**

Finally, Count IV contains a request for punitive damages. In its Motion, Defendant asserts that the request for punitive damages should be dismissed because Plaintiff has not shown that it "engaged in discriminatory practices with malice or with reckless indifference to [his] federally protected rights." (Id. at 9.) Defendant also contends that, if the Court dismisses all of Plaintiff's claims, his request for punitive damages is moot. (Id.)

---

[8]  Plaintiff has not asserted any infringement of constitutional rights. Thus, the Court will focus on whether Defendant violated a statute.

Punitive damages "may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Brown v. Johnson & Johnson, 64 F.Supp.3d 717, 724 (E.D. Pa. 2014) (quoting Hutchison ex rel. Hutchison v. Luddy, 582 Pa. 114, 120-21 (2005)).  In order to award punitive damages, a plaintiff must show that a defendant's actions or failures to act were "intentional, reckless, or malicious." Id.

Because all of Plaintiff's claims are being dismissed, his claim for punitive damages is moot.  Additionally, Plaintiff has not pled any facts to suggest that Defendant acted intentionally, recklessly, or maliciously.  Rather, the facts in the Complaint, when viewed in the light most favorable to Plaintiff, support a reasonable inference that Defendant negligently perceived Plaintiff as making a racially insensitive comment.  Therefore, Plaintiff's request for punitive damages will be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be granted in its entirety. An appropriate Order follows.